# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

FRANK BALISTRERI,

                        Appellant,

      v.                                              Case No. 04-C-0425

BANKRUPTCY ESTATE OF
DONALD P. LOMAX, by
Bruce Lanser as Trustee,

                        Appellee.

---

## DECISION AND ORDER

---

On March 22, 2001, Bruce A. Lancer (the "Trustee"), as trustee for the bankruptcy estate of Donald P. Lomax ("Lomax"), filed a complaint against Frank Balistreri ("Balistreri"), claiming that three real estate transactions between Balistreri and Lomax were avoidable as fraudulent transfers under § 548 of the Bankruptcy Code and Chapter 242 of the Wisconsin Statutes. The Bankruptcy Court of the Eastern District of Wisconsin found that the transactions were fraudulent transfers, and entered judgment of $230,000 in favor of the Trustee. Balistreri appeals. For the following reasons, this Court affirms.

### BACKGROUND

In 1996, Lomax purchased a 16-acre parcel of property in Sheboygan, Wisconsin,

1

(known as the "Mendicino Property") for approximately $400,000. (3/11/02 Tr. p. 64.) Following the purchase of the Mendicino Property, Lomax built a number of 36-unit apartment buildings on the Mendicino Property. (*Id.*, p. 68.) In order to finance this development, Lomax obtained approval of a mortgage loan from the North Shore Bank in the amount of $3,700,000. (*Id.*)

Balistreri, who was a friend of Lomax's, acted as the general contractor on the project through his general contracting corporation, RSI, Inc. ("RSI"). (*Id.*, p. 65.) At the time Lomax purchased the Mendicino Property, neither Balistreri nor RSI had any ownership interest in the property. (*Id.*, p. 83.) However, in 1997, Lomax conveyed a one-half interest in the Mendicino Property to Balistreri for the purpose of guaranteeing the obligations that were due to RSI. (*Id.*, pp.82-83.)

In early 1998, two incidents occurred that began Lomax's descent into bankruptcy. First, Lomax's architect sued Lomax for the full amount of his fees, claiming that Lomax was in violation of the theft by contractor statute pursuant to ch. 779.02(5), Wis. Stats. (*Id.*, pp. 39, 65.) In addition, North Shore Bank commenced foreclosure proceedings against Lomax at about the same time. (*Id.*, p. 15.)

In order to generate funds to satisfy the architect's claims and to keep the Mendicino project moving forward, Lomax attempted to liquidate some of the other real estate that he owned. (*Id.*, pp. 39, 40, 65, 67.) In July 1998, Lomax approached Balistreri to help him liquidate four of his properties. (*Id.*, p. 72.) Balistreri saw Lomax's offer as an opportunity

2

to help his friend and recover payment of some debt that Lomax owed Balistreri.  (*Id.*, p. 113.)  Balistreri decided, therefore, to purchase the four properties from Lomax.

The first transaction was the sale of two commercial buildings to Balistreri that were on a parcel of land in Waukesha, Wisconsin.  (*Id.*, p. 27.)  The closing statement disclosed a total purchase price of $725,000.00 with a down payment of $129,000.00.  (*Id.*)  However, Lomax never received the $129,000.00 down payment, because it was treated as a satisfaction of two promissory notes that Lomax had previously given to Balistreri.  (*Id.*, p. 114.)  The Trustee makes no claim with regard to this transaction.

The second transaction occurred on July 29, 1998, when Lomax sold to Balistreri his property located at 308 Wilmont Drive, Waukesha, Wisconsin.  (*Id.*, pp. 9-10.)  The closing statement prepared by Balistreri disclosed the sales price of $495,000.00 and a $65,000.00 down payment.  (*Id.*, p. 12.)  Balistreri never paid Lomax the $65,000.00 down payment. (*Id.*, pp. 12-15.)

The third transaction occurred two days later, on July 31, 1998.  Lomax sold to Balistreri his property located at 400 Wilmont Drive, Waukesha, Wisconsin.  (*Id.*, p. 20.)  Like the July 29, 1998 transaction, the closing statement disclosed the sales price of $495,000.00 and a down payment of $65,000.00.  (*Id.*, pp. 21-22.)  Also, like the July 29, 1998 transaction, Balistreri did not pay Lomax the $65,000.00 down payment.  (*Id.*, pp. 21-22.)

A similar arrangement was made in the fourth transaction between Lomax and

3

Balistreri. On September 1, 1998, Lomax sold Balistreri his property located at 401 Wilmont Drive, Waukesha, Wisconsin. (*Id.*, p. 23.) The closing statement disclosed a sales price of $485,000.00 and a $100,000.00 down payment. (*Id.*, p. 23.) Balistreri again did not pay Lomax the $100,000.00 down payment. (*Id.*, p. 24.)

The final three transactions (the "Wilmont Transactions") became the subject of this suit. After Lomax filed his bankruptcy petition, the Trustee sued Balistreri, arguing that the debts Lomax incurred in the Wilmont Transactions were avoidable because they were fraudulent transactions pursuant to 11 U.S.C. § 548(a)(1)(B) and ch. 242.05(1), Wis. Stats. The case was tried on March 11, 2002, before Bankruptcy Judge Margaret Dee McGarity, and on September 16, 2002, Judge McGarity concluded that the Trustee met his burden of proof by a preponderance of the evidence. Thus, the bankruptcy court issued judgment against Balistreri in the amount of $230,000.00.

On appeal the district court vacated the bankruptcy court's ruling. *Balistreri v. Bankr. Estate of Donald P. Lomax*, 02-C-1098 (Clevert, J.). The district court found that the bankruptcy court erred by using the preponderance of the evidence standard, rather than the clear and convincing evidence standard. On remand, the bankruptcy court found that the Trustee proved the elements of fraudulent transfer by clear and convincing evidence, and again issued judgment against Balistreri in the amount of $230,000.00.

Before this Court is Balistreri's appeal from the second judgment of the bankruptcy court. On appeal, Balistreri raises two issues: (1) whether Lomax's insolvency at the time

4

of the Wilmont Transactions was proven by clear and convincing evidence, and (2) whether the bankruptcy court applied the clear and convincing standard to the evidence on remand at all. In addition to Balistreri's appeal, also before the Court is the Trustee's motion for sanctions, which claims that Balistreri's appeal is frivolous.

## DISCUSSION

I.     Whether the Trustee Proved Insolvency by Clear and Convincing Evidence

_____The Trustee claims that the Wilmont Transactions were constructively fraudulent transactions as defined by § 548(a)(1)(B) of the Bankruptcy Code and ch. 242.05, Wis. Stats. The purpose of the constructive fraud statutes is to protect creditors from last minute diminutions of the pool of assets in which they have interests. *See Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 892 (7th Cir. 1988). In order for a trustee to establish a fraudulent conveyance under § 548(a)(1)(B), he must prove the following four elements: (1) a transfer of the debtor's property or interest therein; (2) made within one year of the filing of the bankruptcy petition; (3) for which the debtor received less than a reasonably equivalent value in exchange for the transfer; and (4) the debtor was insolvent when the transfer was made or was made insolvent thereby. 11 U.S.C. § 548(a)(1)(B). Similarly, under Wisconsin, law, a transfer is fraudulent if (1) the debtor received less than reasonably equivalent value in exchange for the transfer, and (2) the debtor was insolvent when the transfer was made or was made insolvent thereby. WIS. STAT. ch. 242.05(1). The only question on appeal is whether the bankruptcy court properly found, by clear and convincing

5

evidence, that Lomax was insolvent when he made the Wilmont Transactions.

A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation. *See* WIS. STAT. § 242.02(2). The bankruptcy court found that Lomax's assets totaled $7,788,639.58, and his liabilities totaled $8,017,291.93 at the time of the Wilmont Transactions in 1998. Under Wisconsin law, his asset total would even be lower, according to the bankruptcy court, because Lomax would not be allowed to include his exempt assets, which totaled $370,519.61. *See* WIS. STAT. § 242.01(2)(b), (bm).

Balistreri argues on appeal that the bankruptcy court erred by basing its calculation of Lomax's assets and liabilities on his bankruptcy schedules that he filed with his bankruptcy petition in August of 1999. Balistreri claims that the Trustee did not show that Lomax's assets and liabilities changed significantly between the time of his filing for bankruptcy in August 1999, and the time of the Wilmont Transactions, which occurred in July and September of 1998.

A bankrupt's insolvency on a transfer date may be shown by the subsequent schedules that a bankrupt files, so long as there has not been any substantial change in the bankrupt's assets and liabilities between the transfer date and the date the bankrupt filed for bankruptcy. *See Hanes & Hubbard v. Stewart*, 387 F.2d 906, 907 n.1 (5th Cir. 1967). In the instant action, therefore, in order for the bankruptcy court to properly rely upon Lomax's bankruptcy schedules, there must not have been any marked changes in Lomax's assets and liabilities between the time he filed for bankruptcy in August 1999 and the time of the Wilmont

Transactions, which occurred in July and September of 1998.

Whether there was such a marked change is a finding of fact, which this Court can only reverse if it was clearly erroneous. *See Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 899 (7th Cir. 2002). Balistreri argues that there was a marked change in Lomax's assets and liabilities between July 1998 and August 1999 based on Lomax's 1998 income tax return, which indicates several property transfers in July and August of 1998. However, at trial, Lomax specifically admitted that his 1998 tax returns might not have been accurate, (3/11/02, Tr. p. 73), and Lomax and his accountant, Martin Jansen, both testified that Lomax's tax returns were not prepared from closing statements, but rather just by the net numbers that Lomax gave Jansen. (*Id.*, pp. 74, 94-95.) In addition, one could conclude by Lomax's own testimony that the makeup of his assets at the time of the Wilmont Transactions were no different than those reported in his bankruptcy schedules. (*Id.,* pp. 59-61.) Thus, the Court finds that the bankruptcy court did not clearly error when it found that Lomax was insolvent at the time of the Wilmont Transactions.

In the alternative, Balistreri argues that the amount of liabilities that the bankruptcy court assessed to Lomax was inaccurate because the liabilities included a $910,000 deficiency judgment and a $500,000 construction lien, which Balistreri argues could not properly be applied to Lomax in July 1998. However, Balistreri provides no evidence to support its position, let alone evidence that would allow the Court to conclude that the bankruptcy court clearly erred in this regard either.

7

II.    Whether the Bankruptcy Court Failed to Apply the Clear and Convincing Standard

Balistreri also argues that many of the bankruptcy court's actions can be construed as not applying the clear and convincing standard of review. The Court disagrees. The bankruptcy court, in its opinion, specifically stated on numerous occasions that it was applying the clear and convincing standard of review, *In re Donald L. Lomax*, No. 99-28332 (McGarity, J.), which is sufficient proof that the bankruptcy court did just that.

III.    The Trustee's Motion for Sanctions

The Trustee also filed a motion, pursuant to Federal Rule of Bankruptcy Procedure 8020, seeking additional damages and costs on the basis that Balistreri's appeal is frivolous. While the Court ultimately disagree's with Balistreri's arguments, they are not so lacking in merit to be deemed frivolous. Thus, the Court denies the Trustee's motion for sanctions.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The Bankruptcy Court's Judgment of March 18, 2004 is **AFFIRMED.**

The Appellee's Motion Pursuant to Bankruptcy Rule 8020 (Docket # 12) is **DENIED.**

Dated at Milwaukee, Wisconsin this 30th day of September, 2005.

**BY THE COURT**

s/ Rudolph T. Randa
**Hon. Rudolph T. Randa**
**Chief Judge**

8